# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 2017 | **DATE** | 9/26/2003 |
| **CASE TITLE** | Heller Financial, Inc. vs. Prudential Insurance Company, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: The court grants the Motions for Summary Judgment filed by Heller and Key and denies the Motion for Summary Judgment filed by Prudential. The court declares that Heller by depositing the proceeds from the bankruptcy sale in the registry of this court absolves it of further obligations other than to make distribution as ordered by the court. The court declares that the proceeds deposited with the registry of the court, together with any interest accumulated, is to be distributed as indicated in the court's memorandum opinion and order. Heller's motion to Dismiss Count II of Prudential's counterclaim is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | SEP 29 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 45 |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 03 SEP 26 PM 3:02 | SEP 29 2003 date mailed notice | |
| WAP | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

HELLER FINANCIAL, INC., a
Delaware corporation,

        Plaintiff,

v.

PRUDENTIAL INSURANCE COMPANY OF
AMERICA, a New Jersey
corporation, and KEY CORPORATE
CAPITAL, INC., a Michigan
corporation,

        Defendants.

FILED
SEP 2 6 2003
JUDGE HARRY D. LEINENWEBER
U.S. DISTRICT COURT JUDGE

Case No. 03 C 2017

Hon. Harry D. Leinenweber

DOCKETED
SEP 2 9 2003

## MEMORANDUM OPINION AND ORDER

### BACKGROUND

The facts in the case are not seriously disputed. Since 1994 Heller Financial, Inc. (hereinafter, "Heller") has had agreements with American Paper Group, Inc. (hereinafter, "American"), for the extension of credit. There are two agreements between the parties, a credit agreement and a security agreement. By the terms of the credit agreement, which was amended in 1998 to increase the maximum principal amounts, Heller agreed to extend American credit up to $43 million. The security agreement granted Heller a security interest in and a lien upon all of American's personal and real property. The credit agreement established three tranches of debt: Term A loan of up to $11 million; Term B loan of up to $22 million; and a Revolving Loan of up to $10 million. The latter loan was intended to provide American with a continuing source of cash that it could draw upon

based on formula tied to accounts receivable and inventory levels. American could borrow, repay, and re-borrow for the life of the loan. The two term loans bore interest, required fixed quarterly principal payments, and were not subject to re-borrowing.

The credit agreement entitled Heller to sell participation units in the loans, the terms of which were set forth in separate Assignment and Acceptance Agreements. Under the terms of these agreements Heller agreed to act as the lenders' agent subject to the conditions set forth in the Credit Agreement. Heller subsequently entered into such agreements with Prudential Insurance Company (hereinafter, "Prudential") and Key Corporate Capital, Inc. (hereinafter, "Key"), whereby Prudential undertook 27.27272730% of the Term A loan and 54.54545450% of the Term B loan, and Key undertook 47.61904800% of the Revolving loan and 47.61904800% of the Term A loan. Heller retained the balance. The current outstanding balances on these loans are: Revolving Loan - $5,977,732.98; Term A loan - $6,425,000.00; and Term B Loan - $21,612,500.00. Of these sums, approximately $14.56 million was loaned by Heller; $5.9 million was loaned by Key; and $13.54 million was loaned by Prudential.

In November 2002, American filed a petition for Chapter 11 bankruptcy. On January 14, 2003, the Bankruptcy Court entered an order authorizing American to sell substantially all of its assets to Our Sunday Visitor, Inc. for approximately $13 million, and after payment of certain expenses, amounted to net proceeds in the amount of $11,614,444, which was to be distributed among the three lenders.

The formula by which this amount is to be distributed is the subject of this lawsuit.

**DISCUSSION**

Section 1.5 (C) of the Credit Agreement provides for "Prepayments from Asset Dispositions." Under this provision, if there is an asset disposition, defined as "disposition . . . of . . . any or all of the assets of Borrower . . . other than sales of inventory in the ordinary course of business," the borrower is to "repay the outstanding principal balance of the Revolving Loan by the amount of any reduction in the Borrowing Base attributable to the Asset Disposition" before repaying the Term Loans, which are to be repaid out of any balance remaining.

Heller and Key interpret this provision to require repayment of the entire revolving loan before any payments are made to the Term loans because, they contend, the entire borrowing Base has been reduced to zero by the sale of American Paper's assets. Prudential, on the other had, contends that this section, by its own description and its express terms, only applies to prepayments from proceeds from asset dispositions and because the loans were in default and immediately due by virtue of an acceleration clause, such a payment would not be a prepayment. Moreover the provision only applies to proceeds received by American, which, because the bankruptcy sale order caused the funds to go directly to Heller, were not received by American as required by Section 1.5(C). Prudential argues Section 13 of the Security Agreement governs the distribution of the sale

- 3 -

proceeds. Section 13 provides for the application of proceeds of the sale of collateral upon default and does not prioritize among the three tranches.

Heller has filed an action seeking to interplead and for declaratory judgment against Prudential and Key. Prudential has filed an answer, affirmative defenses, a counterclaim for declaratory judgment and a cross-claim seeking damages against Heller for breach of fiduciary duty. Key filed an answer essentially agreeing with Heller. All parties have filed motions for summary judgment. In addition Heller has filed a motion to dismiss Prudential's cross claim for breach of fiduciary duty, contending that as a matter of law it owed Prudential no fiduciary duty. All parties agree that the loan agreements are unambiguous and are therefore subject to the court's interpretation so that the summary judgment motions present issues of law. *Kallman v. Radio Shack Corp.*, 315 F.3d 731, 735 (7th Cir. 2002).

It appears to the court that Heller and Key have the best of the argument. While Prudential is correct that, if Section 13 of the Security Agreement was all the court had before it, the proceeds should be equally distributed among the three tranches without any priority. However Section 1.5(C) of the Credit Agreement, if it applies to this case, establishes a priority for distribution, *i.e.*, first, to pay off the Revolving Loan and then to pay off the term loans. Section 13 does not foreclose the applicability of Section 1.5(C) because this section merely establishes the order of

consideration for various types of claims, of which accrued and unpaid interest is number three and principal amounts owed is number four. None of the clauses of Section 13 seeks to prioritize among the three tranches of debt, so Section 13 is not inconsistent with the provisions of Section 1.5(C) if this section applies to this case.

Prudential, as we have seen, contends that Section 1.5(C) does not apply because (1) it only applies when American Paper receives the cash proceeds, and here Heller was the recipient; (2) it only applies to pre-acceleration prepayments, where here the bankruptcy and the appointment of a receiver caused a default and acceleration of the debt; and (3) that the consequences of Heller's interpretation are absurd and inequitable.

With regard to Prudential's point number 1, the sales agreement between American Paper and Our Sunday Visitor specifically designated Heller as American Paper's agent for receipt of the sale proceeds. This was done for the good reason of simplifying the transaction. Receipt by an agent is equivalent to receipt by the principal. *ILP*, Agency, Section 65, page 501. Therefore Section 1.5 (C) is not inapplicable for this reason.

With regard to Prudential's point number 2, paragraph 1.5(C) is entitled "Prepayments from Asset Dispositions." Since the maturity date of the Revolving Loan (and the other loans) was accelerated due to an "[e]vent of default", *i.e.*, the voluntary bankruptcy and the appointment of the receiver (*See* Sections 6.1 and 6.3 of the Credit

Agreement), Prudential argues that the application of the sale proceeds to retire the Revolving Loan cannot be considered a "prepayment." The word "Prepayments" is the title given to Section 1.5 of the Credit Agreement of which 1.5(C) is a subsection. Prepayment is a payment made in satisfaction or partial satisfaction of a debt prior to its due date. Repayment is the act of paying back and is not constrained as to time of payment relative to a due date. You can repay a debt at any time whether or not it is due. Thus, repayment would include prepayment but not vice versa. The text of Section 1.5(C) uses the verb "repay" rather than "prepay" with respect to payments made on the Revolving loan. If by disposing of assets American allowed the borrowing base to decrease American was under an obligation to "repay" so much of the proceeds of the asset disposition that was necessary to restore the borrowing base by the amount attributable to the asset disposition. This appears to be required regardless of the extent of borrowing in relation to the borrowing base. Arguably this would not be a prepayment because the payment would then be due. On the other hand, if there are proceeds left over after the Revolving Loan is serviced, and American did not intend to reinvest such excess funds, they must be used to "prepay" the term loans. Thus Section 1.5(C) appears to make a distinction between payments to service the Revolving Loan and payments to service the term loans.

Since the sale of the assets through the bankruptcy court reduced the borrowing base to zero, Section 1.5(C) obligated American

Paper to repay, but not necessarily prepay, the revolving loan up to the amount the borrowing base was reduced due to the asset disposition whether or not the Revolving Loan was due at the time. Thus the noun "Prepayment" in the title to the subsection is inapt and can be disregarded. Furthermore Section 9.8 of the credit agreement provides that subsection headings are not to be given substantive effect and not part of the agreement. The court, therefore, agrees with Heller that Section 1.5(C) applies even though doing so involves a "repayment."

Prudential's final point, that the result of Heller's interpretation is illogical and inequitable, is likewise unavailing. Assuming that Heller's interpretation is correct, and as this opinion shows, this court believes it is, to hold otherwise would require the court to rewrite the parties' agreements. This the court is powerless to do in the absence of some defect in the negotiating process, of which there is no claim. *City of Chicago v. Fiber Optic Corp.*, 222 Ill. Dec. 821, 827 (1st. Dist. 1997).

## CONCLUSION

### Motions for Summary Judgment

The court therefore grants the Motions for Summary Judgment filed by Heller and Key and denies the Motion for Summary Judgment filed by Prudential. The court declares that Heller by depositing the proceeds from the bankruptcy sale in the registry of this court absolves it of further obligations other than to make distribution as ordered by the court. The court thereby declares that the proceeds

deposited with the registry of the court, together with any interest accumulated thereon, is to be distributed as follows:

| LOAN | HELLER | PRUDENTIAL | KEY |
| --- | --- | --- | --- |
| Revolving | 52.38095200% | 0.0% | 47.61904800% |
| Term A | 25.10822470% | 27.27272730% | 47.61904800% |
| Term B | 45.45454550% | 54.54545450% | 0.0% |

### Motion to Dismiss Count II

The court also grants Heller's motion to Dismiss Count II of Prudential's counterclaim. First, since the court has adopted Heller's position as to contract interpretation the motion is undoubtedly moot. Second, the agreement between Heller and Prudential specifically provided that Heller's agency was not to create any fiduciary duty owned to Prudential. Prudential has not cited any case that holds that the mere existence of an agency relationship creates a fiduciary duty in spite of a written agreement to the contrary. Heller on the other hand has pointed out that the Restatement of the Law of Agency allows for contractual disavowal of a fiduciary relationship. *Restatement (Second) of Agency* (1958) Section 376.

Accordingly the Motion to Dismiss is granted.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Date: September 26, 2003